374 So.2d 1072 (1979)
MOUNT VERNON FIRE INSURANCE Company, Appellant,
v.
EDITORIAL America, S.A., and John Mercer Terminal Warehouse Company, Inc., Appellees.
No. 79-1020.
District Court of Appeal of Florida, Third District.
August 14, 1979.
Rehearing Denied September 25, 1979.
Walton, Lantaff, Schroeder & Carson and James Knight, Miami, for appellant.
Smith, Mandler, Smith, Werner, Jacobowitz & Fried and Richard A. Friend, Miami Beach, Magill, Sevier & Reid, Palm Beach, for appellees.
*1073 Before BARKDULL and HUBBART, JJ., and CHAPPELL, BILL G., Associate Judge.
PER CURIAM.
Mount Vernon Fire Insurance Company, the defendant, takes this interlocutory appeal from orders granting motions for partial summary judgment in favor of appellees, Editorial America, S.A., plaintiff, and John Mercer Terminal Warehouse Company, Inc., cross-plaintiff. Notwithstanding the defense raised by the insurer that John Mercer Terminal Warehouse Company, Inc. failed to give timely notice to the insurer and therefore prejudiced the rights of the insurer so that the insurer is entitled to deny coverage on the subject policy, the motions stated that there was no genuine issue as to any material fact on the issue of insurance coverage. In support of their motions, appellees argue that any provision requiring notice had been waived, or at best, the language pertaining to notice and proof of loss is ambiguous, and that said ambiguity should, as a matter of law, be resolved in favor of coverage and against the insurer.
The issues arise from the facts that the jacket of the subject policy was a standard fire insurance policy to which was attached, prior to its issuance, endorsements converting it into a Warehouseman's Legal Liability Policy. The policy was issued for a one year period beginning January 4, 1974, and extended an additional year by endorsement to January 4, 1976, but it was cancelled for nonpayment of premiums on July 10, 1975.
In March, 1975, Editorial America, S.A., discovered that its paper stored in Mercer's warehouse had been damaged by water. They discovered additional damages in April, May and June, 1975. They orally reported the damages to the insured, Mercer, upon each discovery and forwarded a written notice of claim under date of June 26, 1975. It was not until September 3, 1975 that the insurer, Mount Vernon, received notice of loss. Mount Vernon argued that it was prejudiced by such late notice because it was prevented from making an adequate and timely investigation as to cause and damages, protecting its subrogation rights, and taking steps to prevent additional damages from recurrences.
Obviously, we must determine whether the requirements of notice and proof of loss were waived or whether the provisions of the endorsement are ambiguous. Section 8 of the endorsement reads:
.....
"8. Provisions of policy referring to notice and proof of loss are hereby waived, it being agreed that the Insured shall use due diligence to report all losses as soon as they may have knowledge thereof and file proof of loss as promptly as may be practicable."
.....
Appellees argue that the first clause of this section constitutes an express waiver, but even if the entire wording of the section is considered, its contents are ambiguous. Possibly, we might agree with this contention if Section 8 was all we had to consider, but it was long ago established that one part of an agreement may be resorted to for the explanation of the meaning of the language of another part. Pensacola Gas Co. v. Lotzes and others, 23 Fla. 368, 2 So. 609 (1887). All parts of a contract are to be compared, used and construed with reference to each other. Blum v. Avick, 172 So.2d 495 (Fla. 3d DCA 1965); Bituminous Casualty Corporation v. Lewis Crane Service, Inc., 173 So.2d 715 (Fla. 3d DCA 1965), and the legal effect of a contract must be determined from the words of the entire contract. Hoffman v. Robinson, 213 So.2d 267 (Fla. 3d DCA 1968). Looking to the language of Section 14 of the endorsement,
.....
"14. The terms and conditions of this form are to be regarded as substituted for those of the policy to which it is attached, the latter being hereby waived."
.....
*1074 it clearly describes the terms and conditions on the endorsement form as substitutions for those in the standard fire insurance policy to which it is attached. Commencing at line 90 of the standard fire insurance policy, its provisions require the insured to give immediate written notice to the company of any loss, "... and within sixty days after the loss, unless such time is extended in writing by this Company, the insured shall render to this Company a proof of loss... ." These are the provisions waived in the endorsement. Substituted for immediate notice of loss is that the insured shall use due diligence to report all losses as soon as they may have knowledge thereof; while the requirement of proof of loss within sixty (60) days after the loss is replaced with a requirement that it be forwarded as soon as may be practicable. We further note that Section 9 of the endorsement states in part:
.....
"9. The amount of loss or damage for which the Company may be liable shall be payable sixty (60) days after proof of loss, as herein provided, is received by the Company... ."
.....
Payment of claims being the primary purpose of a policy of insurance, it is neither logical nor reasonable that the parties intended to condition such payment upon a provision that had been expressly waived. Rigel v. National Casualty Company, 76 So.2d 285 (Fla. 1954); United States Fire Insurance Company v. Morejon, 338 So.2d 223 (Fla. 3d DCA 1976). Thus, we find that the language of the policy is neither ambiguous nor doubtful, it being both logical and reasonable that some notice of loss would be required of the insured. Baker and Company, Florida v. Goding, 317 So.2d 118 (Fla. 3d DCA 1975).
We further find that the failure of the insured to give notice and proof of loss to the insurer in accordance with the provisions of the policy creates a presumption of prejudice to the insurer, and that the insured has failed to establish that the insurer was not prejudiced thereby. H.S. Equities, Inc. v. Hartford Accident & Indem. Co., 334 So.2d 573 (Fla. 1976).
Reversed and remanded.