DELL, Judge.
Attorneys’ Title Insurance Fund, Inc. appeals from a final judgment and contends that the trial court erred when it determined that appellees were entitled to coverage under its policy. We affirm.
Worthington Associates (“Worthing-ton”), a partnership, purchased four contiguous lots, Lots 1, 2, 3 and 4 on Worthing-ton Road in West Palm Beach. Appellant deleted the exceptions contained in the title insurance policy for unrecorded easements, “encroachments, overlaps, boundary line disputes, and any other matters which would be described by an accurate survey and inspection of the premises” and substituted, in its place language to the effect that the policy did not insure against loss or damage by reason of a plat of survey dated July 1985, which survey did not reflect the sewer line discovered later. Wor-thington proceeded with its construction plans, obtained a commitment for a construction loan of $1,600,000 and expended or committed substantial sums of money which were at risk unless the development proceeded on schedule.
Upon application for a building permit, the City inspected the property and found a sewer line directly under one of the proposed building sites and refused to grant Worthington a building permit until Wor-thington agreed to relocate it. Worthing-ton relocated the sewer line and granted an additional ten-foot easement to the City for the relocated line.
Months later, Worthington made a demand on the appellant for $38,290 for the cost of relocating the sewer line and the costs of the ten-foot strip for the new city easement. Appellant claimed lack of coverage and lack of notice, and refused this demand. In the resulting litigation, the parties agreed in their pretrial stipulation that the sewer line had been constructed by a previous owner but was not shown on the survey attached to the title policy nor was it evidenced by a recorded easement. The trial court predicated its judgment in favor of appellees on lack of prejudice to appellant from Worthington’s failure to give proper notice and upon the fact that Wor-thington effectuated a commercially reasonable solution to the problem.
Appellant contends that the trial court erred in determining that appellees were entitled to coverage despite their failure to give notice pursuant to the insurance policy. Appellant also contends that the trial court erred in overruling its objection to expert witness testimony concerning the feasibility of alternative remedies available to appellees after the discovery of the defect.
We find no error in the trial court’s determination of coverage. Appellant removed the exception for unrecorded easements and defects which would have been disclosed by an accurate survey and inspection of the premises. We also note that although appellant initially denied coverage, its position had changed by the time of trial. One of its attorneys testified as follows:
Q. But my point is now for four-and-a-half months you haven’t even mentioned this lawsuit against the City. In fact, in actual fact you’ve done nothing except denied the claim and said tell the insureds to go see the surveyor. Isn’t that true?
A. I’m testifying to this Court that was an incorrect position that I subsequently changed in my letter to you of December 11th.
Q. Okay.
A. That we felt we had been prejudiced by the lack of notice, and I feel that the previous letters were incorrect, that we would — now that I’ve had time to reflect I think we would have had liability at that point based on a survey that— the deletion of the survey exception in the policy and based on the survey they were provided at closing.
Q. Your opinion is now that the Fund would have had liability in November of 1986; is that correct?
*331 A. Well, I — that’s probably not — in other words, what we were saying to you at that point — and you’ve got to understand I have a hundred and seventy-four open claim files in my office in Orlando right now.
Q. Oh, I can appreciate that.
A. And I’ve handled probably well over five hundred claims for Attorneys’ Title Insurance Fund.
That what I was saying to you — I may not have artfully expressed it to you. We feel you had a party who was actively liable, i.e., the surveyor. That you had an opportunity to pursue your remedy against the surveyor and you should do that.
Q. Well, Mr. Barnes, let’s be entirely accurate about it.
You’re saying, Mr. Rogers, we may be liable. I’m not going to admit it. But you’ve got some other people that might be liable, so why don’t you go chase them first and then come and see us. Isn’t that what you’re saying?
A. Yes.
We also find no error in the trial court’s determination that appellees’ late notice did not prejudice appellant. In Holinda v. Title and Trust Company of Florida, 438 So.2d 56 (Fla. 5th DCA 1983), the title insurance company failed to except four liens from its policy insuring the Ho-linda’s property. Prior to resale of the property the insureds settled the liens. The title company claimed that it had no liability under the policy due to the insured’s voluntary settlement of the liens and the insured’s failure to obtain its written consent prior to settlement. The Fifth District Court of Appeal concluded:
There are cases involving insurance claims which hold that while the failure of the insured to give timely notice of loss in contravention of the policy may constitute a legal basis for the denial of policy benefits, the insured may recover if he can show that the late notice did not prejudice the insurer_ A presumption of prejudice to the insurer exists and the burden is on the insured to show that his late notice did not cause prejudice .... We believe that this principle is applicable here and that the Holindas are entitled to recover for their loss under the policy if they can show that Title and Trust was not prejudiced by their failure to obtain its advance written consent to the settlements.
Id. at 57-58.
Here, the policy provides under “Conditions and Stipulations” that the “failure to notify shall in no case prejudice the rights of' any such insured under this policy unless The Fund (insurer) shall be prejudiced by such failure and then only to the extent of such prejudice.” Appellees presented evidence that they effected a commercially reasonable remedy and one which mitigated appellant’s liability rather than enhanced it. Appellees’ expert testified as to the potential duration, cost and complexity of a suit against the city. The expert also testified that the existence of three potential defendants would have protracted the length of litigation. We find nothing in the record that shows that appellees’ actions increased the extent of appellant’s liability under its policy. We also note that appel-lees’ actions did not prejudice appellant’s subrogation rights since, subject to applicable statutes of limitations, appellant may proceed against such parties as may be appropriate.
Finally, we find ho merit in appellant’s argument concerning the admission of the experts’ testimony.
Accordingly, we affirm the judgment in favor of appellees.
GLICKSTEIN, J., concurs.
HERSEY, C.J., concurs specially with opinion.